UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT LYNN WELLS,

    Plaintiff,

v.                                                                             Case No. 3:13cv596/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Robert Lynn Wells' application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed, and the application for benefits denied.

## ISSUES ON REVIEW

Mr. Wells, who will be referred to as claimant, plaintiff, or by name, raises one issue.  He claims the ALJ failed to adequately develop the record. (Doc. 14, p. 8-12).

More specifically, claimant suggests the ALJ's failure to "order additional neuropsychological and/or psychiatric testing" constitutes reversible error. (Doc. 14, p. 10-11).

## PROCEDURAL HISTORY

On February 25, 2010, Mr. Wells filed applications for DIB and SSI, alleging disability beginning on January 9, 2009. T. 163-167, 168-172, 183.[1] The applications were denied initially, T. 58-59, and upon reconsideration. T. 60-61. Plaintiff appeared before the ALJ for a hearing on February 8, 2012. T. 30. On June 29, 2012, the ALJ issued a decision denying claimant's applications for DIB and SSI. T. 10-22. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

• Claimant meets the insured status requirements of the Social Security Act through March 31, 2011. T. 12.

• Claimant has not engaged in substantial gainful activity since January 9, 2009, the alleged onset date. T. 12.

• Claimant has the following severe impairments: chronic pain syndrome, fatigue and migraine headaches, prior head injury, degenerative disc disease and arthritis. T. 12.

---

[1] The administrative record, as filed by the Commissioner, consists of six volumes (docs. 12-2 through 12-7), and has 389 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

- Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant can lift/carry no more than 20 pounds occasionally and 10 pounds frequently. During an 8-hour workday, he can sit for 4 hours and stand/walk for 3 hours. He can perform repetitive simple grasping, pushing/pulling and fine manipulation bilaterally. He can use either or both feet for repetitive movement. He can frequently reach, occasionally bend, squat, and climb but never crawl. He has no limitations feeling, seeing, hearing, or speaking. The claimant had moderate restriction of activities involving being around moving machinery, driving automotive equipment, and exposure to heights. He had only mild restriction of activities involving exposure to dust, fumes, gases, temperature extremes, humidity, or vibration. Pain would not prevent functioning in everyday activities or work. T. 13-14.

- Claimant is unable to perform any past relevant work. T. 20.

- Claimant was born on July 27, 1958, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. T. 20.

- Claimant has at least a high school education and is able to communicate in English. T. 20.

- Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. T. 20.

- Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform. T. 20.

• Claimant has not been under a disability, as defined in the Social Security Act, from January 9, 2009, through the date of this decision. T. 21.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A

reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[3]

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[4]

Mr. Wells experienced two severe injuries while working as a longshoreman. In 1981, claimant was struck in the face by a pallet, resulting in a "fractured mandible" and a "mild C6 vertebral compression fracture without any malalignment." T. 263. After facial reconstructive surgery and a month of treatment in the hospital, x-rays showed "good alignment" and "the compression fracture at C6 was barely

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

perceptible." T. 37, 265. Claimant returned to work as a longshoreman following the accident, T. 37-38, and on October 16, 1992, he was struck in the forehead by a piece of wood that fell from 55 feet overhead. T. 262. He was rendered unconscious for 3 to 5 minutes with a large laceration on the left side of his forehead. T. 262. A CT scan revealed multiple facial fractures as well as a right basilar skull fracture. T. 262. Claimant underwent surgery to repair his injury. T. 262. In February 1993, a CT scan of the brain was "virtually normal." T. 262. Plaintiff nevertheless continued to report intermittent headaches which were sparingly treated with analgesic medications. T. 262.

Fritz LaCour, Jr., M.D., served as plaintiff's primary care physician and provided treatment for chronic pain syndrome secondary to head trauma. T. 307. Claimant testified he sees Dr. LaCour, a neurologist, twice a year. T. 40. Dr. LaCour prescribed MS Contin for pain relief, Celexa for depression, and Cialis to counter effect the side effects of the antidepressants. T. 43, 307-314, 356-357. Although treatment notes generally indicate claimant was doing well, he reported a couple of days of depression after losing his job as an electrician in 2009. T. 311. On a Physical Capacities Evaluation form completed on November 29, 2011, Dr. LaCour noted MS Contin could interfere with claimant's ability to work. T. 362.

Randi McDonald, Psy. D., performed a consultative examination of Mr. Wells on April 21, 2010. T. 300. Claimant reported no significant disturbances of mood/behavior, suicidal/homicidal ideation, or symptoms of psychosis. T. 302. Mr. Wells stated his mood was "between depressed and not motivated" and stressors included not being able to work and poor health. T. 302. Dr. McDonald diagnosed "depressive disorder NOS; history of substance abuse – in reported full remission;

cluster A and B personality traits; history of 2 [traumatic brain injuries]; [degenerative disc disease]; and chronic migraine headaches." T. 304. Dr. McDonald assigned a global assessment of functioning (GAF) score of 50 to 55. T. 304. Prognosis was "very guarded." T. 304. Mr. Wells had not worked since suffering physical issues in January 2009 and testing positive for a substance or prescription medication. T. 304. The doctor, however, was unable to determine whether claimant's unemployment was "due to medical issues or simple inability to find a job." T. 304. Claimant presented "as someone who would likely have difficulties with getting along with others for sustained periods of time, impeding his ability to maintain gainful employment in some settings[.]" T. 304. The doctor suggested "cognitive impairments may also impair his ability to succeed within the work environment." T. 304. Dr. McDonald recommended "(1) supportive therapy addressing above-noted symptoms; (2) neuropsychological evaluation to clarify cognitive strengths and weaknesses and the impact these have on his ability to maintain employment; and (3) psychiatric evaluation to assess the appropriateness of current medications as he reported significant side effects of sedation." T. 304.

On June 8, 2010, Martha Putney, Ph.D., completed a Psychiatric Review Technique form based on a review of plaintiff's medical records. T. 315-328. Dr. Putney concluded claimant's affective disorder and substance addiction disorder were not severe. T. 315. She found no restrictions in activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence, or pace. T. 325. Dr. Putney noted no cognitive sequelae from plaintiff's 1992 head injury and also the absence of psychiatric treatment, psychological treatment, or mental health counseling in plaintiff's medical history. T. 327.

Claimant sought treatment from Robert Kincaid, D.O., on December 16, 2010. T. 343-345. He reported experiencing chronic fatigue and falling asleep easily at work. T. 343. Dr. Kincaid advised plaintiff his fatigue could be related to the use of MS Contin and recommended plaintiff discuss this possibility with Dr. LaCour. T. 344. Dr. Kincaid refilled claimant's rosacea medication and ordered routine blood work. T. 344-345.

On January 20, 2011, Mr. Wells sought psychiatric treatment from Jose Montes, M.D., at Lakeview Center. T. 346-348. Claimant complained of being "stress[ed] and tense" and reported frequent sadness but denied feeling hopeless or helpless. T. 346. Plaintiff reported no previous psychiatric treatment. T. 346. Dr. Montes noted the following: "His thought process is spontaneous and seems to be goal directed. There are no signs of disorganized thought. Thought content is coherent, with no perceptual disturbances. There is no formal thought disorder. Denies hallucination, both visual and auditory. There is no paranoid ideation. . . . Cognition and memory seem to be intact." T. 347-348. Dr. Montes diagnosed "dysthymia, chronic pain syndrome, and history of polysubstance abuse (marijuana, opiates, and alcohol)." T. 348. Claimant was assessed a GAF score of 50. T. 348. Claimant did not return to Lakeview Center for further treatment from Dr. Montes. T. 40. Mr. Wells testified at the hearing that he finds it difficult to receive treatment for his condition because doctors think he is seeking medication when he describes his past injuries. T. 39.

William Wilson, D.O., examined Mr. Wells on January 13, 2012. T. 369. Dr. Wilson noted claimant appeared "uncomfortable due to his aches and pain but still presents with a pleasant and affable affect." T. 369. Plaintiff's neck pain was

accounted for by the narrowing of disc space and degenerative disc disease at C5-C7. T. 369. Dr. Wilson opined: "Mr. Wells['] conditions will continue and will interfere with any ability to work. He is on heavy duty narcotic medication which causes severe sedation. His history of several head and neck related traumas have weakened his mental acuity and the structure of his neck. His neck will continue to deteriorate and increase in pain." T. 369. Dr. Wilson indicated the sedation caused by claimants's medication would interfere with his ability to work. T. 378. "Based on his medications and the high risk of further damage to his head and neck," Dr. Wilson believed it was medically necessary that claimant refrain from working. T. 370.

At the hearing before the ALJ, claimant offered testimony as to his employment history and daily activities. Mr. Wells was fifty-three years old at the time of the hearing and has a GED. T. 34. He has work experience as an electrical apprentice, newspaper carrier, massage therapist, landscaper, and certified nursing assistant. T. 31-32, 36. He has been unable to find employment because of his injuries. T. 33-34. He helps his mother, who has a metabolic syndrome, by buying her groceries, washing her clothes, and emptying her bed pan. T. 35-36. Headaches and back pain lead plaintiff to lay down for long periods of time. T. 45-46. Corrective surgery is recommended for claimant's back but he is afraid of the invasive surgery. T. 46. Claimant has an irregular sleeping schedule and spends the day watching the Christian channel on TV. T. 47. He can lift six or seven pounds and stand or sit for five to twenty minutes at a time. T. 47. He can walk a few hundred feet before needing a break. T. 47-48. Plaintiff believes he is unable to work due to degenerative disc disease, which makes it uncomfortable to sit or stand. T. 38.

A vocational expert (VE) offered testimony at the hearing concerning the employability of individuals with certain limitations. T. 50-54. The VE testified an individual limited to light work with the same age, educational history, and vocational history as claimant could perform claimant's past work as a newspaper carrier. T. 51. A person with these limitations could also perform jobs as a cashier, information clerk, deliverer (outside), and companion. T. 51-52. The VE testified the limitations contained in the psychological evaluation of Dr. McDonald, the consultative examiner, would not change his answers. T. 52. When questioned by plaintiff's counsel, the VE indicated Dr. McDonald's statements that claimant presented "as someone who would likely have difficulties getting along with others for sustained periods of time" and "cognitive impairments may also impair his ability to succeed within the work environment" were not specific enough to answer vocational-related questions. T. 53-54. The VE suggested the social and cognitive limitations needed to be rated at a mild, moderate, marked, or severe level "to predicate any input." T. 53.

## ANALYSIS

Mr. Wells raises one issue – asserting the ALJ, by declining to order a consultative examination, failed to adequately develop the record. (Doc. 14, p. 8-12). The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000), *Crawford & Company v. Apfel*, 235 F.3d 1298 (11th Cir. 2000), and is informal. *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b). Due to this informality, ALJs, like European magistrates, have a duty to develop a complete record. *Kendrick*, 998 F.2d at 456. In this Circuit, the ALJ has

an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even if the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (*citing Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981) (Unit B)); *Smith*, 792 F.2d at 1551 (*citing Cowart*, 662 F.2d at 735). The ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Company*, 235 F.3d at 1304.

That does not mean, however, the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, the ALJ must have sufficient evidence to decide the case. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. 1981) (Unit B) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) are the seminal cases in this circuit on the ALJ's duty to develop the record. Both held the ALJ need not order a consultative examination unless the record establishes that such an examination was necessary to enable the ALJ to make an informed decision. Where the ALJ has sufficient information to decide the case, however, he or she can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made). Moreover, "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the

claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c).

Plaintiff asserts the ALJ's failure to adequately develop the record is established by three matters of record: (1) Dr. McDonald's[5] consultative examination assessed cognitive limitations and recommended additional evaluation, indicating, in claimant's view, the examination was insufficient for the ALJ to make an informed decision; (2) the ALJ admitted on the record that more medical evidence was needed to evaluate the claim adequately; and (3) the vocational expert indicated a psychological evaluation with more specificity would have made it easier to answer vocational-related questions. (Doc. 14, p. 9-12). A review of each of these matters demonstrates claimant's assertion of error lacks merit.

First, claimant notes that consultative examiner Dr. McDonald "opined that Mr. Wells' 'cognitive impairments may also impair his ability to succeed within the work environment'" and "specifically recommended that the following testing be performed to further evaluate Mr. Wells' work-related impairments: (1) a neuropsychological evaluation to clarify Mr. Wells' cognitive strengths and weaknesses and the impact these have on his ability to maintain employment, and (2) a psychiatric evaluation to assess the appropriateness of the current medications as Mr. Wells reported significant side effects of sedation." (Doc. 14, p. 10). Based on this assessment and recommendation, claimant concludes Dr. McDonald's examination was insufficient for the ALJ to make an informed decision concerning claimant's mental limitations. (*Id.*). Thus, claimant argues, the ALJ was placed

---

[5] Plaintiff refers to the consultative examination as being conducted by a Dr. Turner. Although Brett W. Turner, Psy. D., is listed on the letterhead of the evaluation, the listed examiner and the signature on the report indicate Dr. Randi McDonald evaluated claimant. T. 300, 305.

"under a duty to order additional neuropsychological and/or psychiatric testing." (*Id.*).

The ALJ did not rely solely on the evaluation of Dr. McDonald to reach his decision concerning plaintiff's mental condition. After a thorough analysis of Dr. McDonald's opinion, T. 15, the ALJ proceeded to discuss Dr. Montes' psychiatric evaluation, which, as the Commissioner correctly notes in her memorandum, was conducted after Dr. McDonald issued her assessment and recommendations. T. 15-16; (Doc. 15, p. 11). Dr. Montes reported claimant's "thought process is spontaneous and seems to be goal directed[,] [t]here are no signs of disorganized thought[,] [t]hought content is coherent with no perceptual disturbances[, and] . . . [c]ognition and memory seem to be intact." T. 347-348. Dr. Montes noted Mr. Wells was "tolerating the Celexa." T. 348. The ALJ then compared the opinions of Dr. McDonald and Dr. Montes and discussed claimant's activities of daily living:

> Dr. McDonald's objective findings are consistent with those by Dr. Montes. Although both doctors found affective disorder, the functional limitations were not significant. His attention/concentration was adequate. Although he reported short-term memory difficulties, his grades in school were "average," he obtained his GED, completed massage therapy, obtained a Certified Nursing Assistant (CNA) degree and his electrician's license. Therefore, any memory problems do not appear to significantly limit his functioning. He also reported a limited social life. However, he attends annual conferences to complete continuing education courses in order to maintain his massage therapy license. He also shops for necessities. The record indicates that the claimant maintained consistent employment for most of his life, until he had physical issues in January 2009. However, he tested positive for substance/prescription medication where he was working. He has not worked since that time, but Dr. McDonald noted that it was not clear whether this was due to medical issues or simple inability to find a job.

T. 16. Relying upon the psychological evaluations of two doctors and claimant's

reported activities of daily living, the ALJ had sufficient evidence to make an informed decision concerning plaintiff's cognitive limitations.

The ALJ also addressed the potential side effects of claimant's medication by referencing the opinion of Dr. LaCour, who had treated Mr. Wells for several years and prescribed MS Contin and Celexa.  T. 19.  Dr. LaCour opined that claimant's prescribed medications could cause some limitations on his ability to work but not to such a degree as to create serious problems in most instances.  T. 363.  This is consistent with Dr. LaCour's treatment notes from March and September of 2008, which showed Mr. Wells was capable of working as an electrician while taking MS Contin.  T. 313-314.  Furthermore, Dr. LaCour's final treatment note from August 4, 2011, indicates claimant was doing extremely well.  T. 356.  He reported minor dizziness and a desire to be checked for an ear infection.  T. 356.  The note revealed no cognitive limitations or depression.  T. 356-357.  Thus, the ALJ did not rely solely on Dr. McDonald's evaluation to determine claimant's cognitive limitations or the side effects of his medication.  Because the ALJ reached his decision after considering a variety of evidence, an additional consultative examination was not necessary.

Plaintiff next contends the ALJ "admitted on the record that more medical evidence was necessary to evaluate the claim adequately."  (Doc. 14, p. 11).  After plaintiff's counsel requested that Ms. Wells' wife be called to testify at the hearing, the ALJ responded:

> Well I'd rather see some additional, you know, medical proof.  I mean, I think that's a problem I have with this case is that even though Mr. Wells has had some insurance, we don't have a consistent, you know, history of medical treatment or you know, specialized treatment for what he complains of.  I think that's my problem with it.

T. 55. Claimant characterizes this remark as an admission by the ALJ that there was insufficient evidence in the record to adequately evaluate claimant's condition. (Doc. 14, p. 11). The undersigned does not see that the ALJ's statement necessarily implies the medical record was insufficient to render an informed decision. Instead, the statement reads simply as the ALJ's acknowledgment–and perhaps suggestion to counsel–that, as of that point, the medical record did not bear out the claimed disability. The statement could thus be reasonably seen as suggesting the ALJ believed claimant's lack of treatment undermined the alleged severity of his condition. In any event, this statement does not cast doubt upon the adequacy of the ALJ's written findings. As discussed above, the ALJ's decision identified sufficient evidence from which to make an informed decision, regardless of comments the ALJ made at the hearing.

Lastly, claimant asserts the vocational expert's ("VE") testimony supports the conclusion an additional consultative examination should have been ordered. (Doc. 14, p. 11). The VE indicated Dr. McDonald did not assess claimant's ability to get along with others and his cognitive impairments with the specificity necessary to answer vocational-related questions. T. 53-54. Claimant argues the ALJ should have ordered additional psychological testing to provide the VE with "more specifically enumerated impairments" with which to answer vocational questions. (Doc. 14, p. 11). After reviewing the opinions of Drs. McDonald and Montes and claimant's activities of daily living, however, the ALJ concluded claimant did not suffer from social or cognitive limitations that would interfere with his ability to work. The questions the ALJ asked the VE reflect this conclusion. The inability of the VE to answer questions based exclusively on Dr. McDonald's opinion of claimant's social and cognitive limitations does not indicate an additional consultative examination

was necessary or reversible error occurred.

## CONCLUSION

In sum, the record contained sufficient evidence for the ALJ to reach an informed decision concerning if claimant was disabled. The ALJ was not required to order an additional consultative examination before concluding plaintiff was not disabled.

Accordingly, it is ORDERED:

1. The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2. The clerk is directed to close the file.

DONE AND ORDERED this 2nd day of March, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**